IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


ANDREA STEEN,

    Plaintiff,

vs.                                            CASE NO. 1:05CV65-MMP/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    Defendant.

_____/


**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.    **PROCEDURAL HISTORY**

Plaintiff filed an applications for DIB and SSI on January 19, 2001, alleging a disability onset date of February 15, 2000, because of back pain, depression and side effects of her medication. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on August 14, 2003, and entered an unfavorable

decision on November 26, 2003. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.      FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had cervical and lumbar degenerative disease, which were severe impairments within the meaning of the Regulations, but that her other alleged impairments, rhinitis, endometriosis, hepatitis C, gastric reflux, and depression are not severe as they were well controlled with medications and have not interfered with her ability to work. (R. 19). The ALJ did not find her allegations of pain and limitation credible because objective testing shows full range of motion, the ability to ambulate normally, and the ability to complete all normal activities of daily living. (R. 20). Thus, the ALJ found her limited to light work levels, limited to the necessity to change positions frequently, and only occasionally crawl, climb, kneel , stoop, crouch and bend. Plaintiff also required a sit/stand option. (R. 20). Utilizing the testimony of a vocational expert, she determined that Plaintiff could return to her past relevant work as a data entry clerk or telephone solicitor, but even if she could not perform these jobs there were significant numbers of other jobs which she could perform with her abilities such as ticket seller, agricultural product sorter, call out operator, and surveillance system monitor. (R. 22-23). The ALJ also considered the late submitted medical information that Plaintiff was HIV positive, and found that this did not change her findings. (R. 22). Thus, the ALJ found that she was not disabled.

**No. 1:05CV65-MMP/AK**

**C.   ISSUES PRESENTED**

Plaintiff argues that: (1) her due process rights were violated when her attorney was not allowed to cross examine the vocational expert at the hearing; and (2) the ALJ erred in not submitting to the vocational expert a hypothetical that encompassed all of Plaintiff's impairments, specifically that the hypothetical did not include a severe mental impairment and the resulting inability to work full time because of her depression and fatigue.

The government responds that the questions not permitted by the ALJ concerned Plaintiff's alleged depression, which the ALJ found to be not severe. Since the ALJ had determined that the depression did not affect her work ability, any questions concerning this alleged impairment would have no bearing on the ALJ's ultimate decision. Also, the government contends that the medical evidence did not support a finding that she suffered from a severe mental impairment; thus, the ALJ did not have to include it in a hypothetical to the expert.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.   STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422

**No. 1:05CV65-MMP/AK**

(11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

   A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

**No. 1:05CV65-MMP/AK**

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner

**No. 1:05CV65-MMP/AK**

carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Medical records of Plaintiff's treating physician, Dr. Micki Kantrowitz, show a long, well documented treatment history primarily for endometriosis.  See below.  The records also reveal a long history of non-compliance with suggested medications for depression and gastric problems, physical therapy, as well as repeated suggestions to stop smoking and drinking.  Later treatment notes indicate that Plaintiff was smoking crack cocaine for six years during this treatment history for which she was finally incarcerated.

03/22/1994: Endometriosis.  (R. 196).
04/01/1994: Negative HIV test.  (R. 196).
06/03/1994: Abnormal pap.  Endometriosis.  (R. 195).
6/14/1994: Told she could not give blood because of possible Hepatitis (R.194).
07/05/1994: Tests positive for Hepatitis C.  (R. 193).
09/07/1994: Endometriosis.  (R. 192).
12/02/1994: Hepatis C and abnormal Pap smear.  (R. 191).
06/29/1995: Left knee injury, ligament strain.  (R. 187).
01/24/1996: Endometriosis.  (R. 186).
04/18/1996: Upper back strain and endometriosis.  (R. 185).
10/15/1996: Upper Respiratory Infection. (R. 184).
10/24/1996: Back pain, prescribed heat and exercise.  Advised to quit smoking.
        R. 183).
02/12/1997: Abdominal pain
04/29/1998: Elevated blood pressure.  Advised to quit smoking, drinking, and
                exercise.  (R. 181).

**No. 1:05CV65-MMP/AK**

10/21/1998: Plaintiff complaining of abdominal pain and fatigue. Tests were conducted, and she was advised to quit smoking and drinking. (R. 179).
11/05/1998: Plaintiff evicted from apartment and under significant stress. Abdominal pain improved with Zantac, but she forgets to take it regularly. Information provided about local resources to help with her situation. (R. 177).
11/19/1998: She reported stress, depression, epigastric discomfort. Medications prescribed for depression and stomach. (R. 175).
12/31/1998: Paxil appeared to be working for her depression and her epigastric discomfort was resolving. (R. 174).
01/20/1999: Treated for virus. (R. 172-173).
04/06/1999: Abdominal pain related to endometriosis. Taking antidepressant, but not as directed. (R. 170).
07/07/1999: Routine visit for endometriosis, rib cage pain following a fall. (R. 168).
12/10/1999: Back pain following fall in parking lot for which she sought emergency room treatment. (R. 167). She was given pain medication anti-inflammatory medication, and referred for physical therapy. (R. 167). She participated only minimally with the physical therapy program and it was discontinued. (R. 273-297).
05/10/2000: Treated for abdominal pain related to endometriosis, admitted to continued smoking and failure to take anti-depressant regularly, none for past few days. (R. 164).
09/08/2000: Follow up examination complaining primarily about her back pain, which was exacerbated by a recent fall. (R. 161). She reported that her reflux was "minimal" with her medication, and that she was not taking her Celexa regularly for depression. She continued to smoke. (R. 161).
09/15/2000: Abnormal liver scan, negative HIV test. (R. 160).
11/15/2000: Endometriosis. Admitted to drinking 2 beers per day and smoking. (R. 152-153). She was told to quit both items and return for liver profile. (R. 152).

Significant to this decision are hospital records, which show emergency room treatment on November 4, 1999, following a fall, which resulted in a diagnosis of neck and low back strain, muscular in nature, requiring only pain medication and conservative treatment. (R. 235-244).

Plaintiff went to the emergency room again on March 18, 2003, and March 27, 2003, for back pain and was told that it was strain, to treat It conservatively and not to

**No. 1:05CV65-MMP/AK**

lift over 10 pounds for 5 days. (R. 218-234). X-rays taken at this time showed only degenerative changes involving lower cervical spine. (R. 326).

A consultative examination by Dr. Robert Greenberg dated July 25, 2001, found her to have "possible hepatitis C," and chronic low back pain probably due to lumbar osteoarthritis, which she said resulted from a fall in 1999, and chronic depression. (R. 198). He found nothing that would limit her ability to work.

A consultative psychological examination by Dr. Legum dated August 14, 2001, found Plaintiff to have recently completed a treatment program at Bridge House and to have been incarcerated related to a crack cocaine charge. (R. 201). Her primary complaint was back pain following a fall in 1999 for which she received treatment at the emergency room, but no x-rays. (R. 200). She was being evaluated for depression. She did not indicate any limitations in daily living, except a degree of pain. (R. 202).

A Psychiatric Review Form prepared by Dr. Zelenka on September 20, 2001, found her to have no significant limitations from her mental impairment. (R. 203-208).

A Physical RFC dated September 21, 2001, found her to be virtually unlimited and capable of medium level work, with her symptoms not consistent with the total evidence. (R. 209-216). This assessment was based on treating physician records.

F.   **SUMMARY OF THE ADMINISTRATIVE HEARING HELD AUGUST 14, 2003**

The ALJ advised that Plaintiff's date last insured (DLI) is December 31, 2001, so that she must prove that she was disabled prior to that date. (R. 368). She also told her that if the ALJ found that she was disabled because of alcoholism or drug abuse or

had been non-compliant with medical treatment, she would find her not disabled. (R. 368). At the time of the hearing Plaintiff was working part time at Taco Bell. (R. 370). This job required her to be on her feet five to six hours a day and lift up to 10 pounds. (R. 372). She worked at Kentucky Fried Chicken and a dry cleaners business before that. (R. 373). The only limitations a doctor has ever placed on her was a three day limit on lifting over 10 pounds. (R. 379). She was also told to exercise regularly, and she says she has been compliant with physical therapy. (R. 380). When questioned further, she admitted that she was not compliant. (R. 381). She continues to drink even though she understands that it hurts her liver, which is already compromised, and has been told repeatedly to quit. (R. 381). Plaintiff takes medication for depression, which she says she believes is controlling it, and she has never had counseling or seen a mental health doctor. (R. 386). Her back causes her pain after sitting 30 to 45 minutes or standing after two hours. (R. 387). Her pain is at a 7 or 8 on a pain scale of 1 to 10. (R. 392). She is hoping to get more hours at work. (R. 391).

The vocational expert was called and testified that her work experiences as a fast food cashier was light. The hypothetical posed was a young individual 38 years old, high school education, able to lift 10 pounds, can sit 8 hours, 30 to 45 minutes at a time, can stand two hours, walk two blocks, with pushing and pulling limited to 10 pounds of force, no environmental restrictions, no mental restrictions. (R. 397-398). Plaintiff could perform 10% of the jobs she had performed in the past and the present job she had so long as she was not required to stand more than two hours at a time, such as with a 15

**No. 1:05CV65-MMP/AK**

minute morning break, lunch, and 15 minute afternoon break. (R. 398-400). Nearly all sedentary jobs have a sit stand option which would accommodate the hypothetical parameters. (R. 401). There were a number of sedentary jobs which she could perform. (R. 401). The following exchange then occurred:

> ATTY: Okay, So if a person -- let me ask you this. If a person is working those jobs on a part-time basis would they be afforded the same number of breaks? I think you mentioned about the fast food cashier.
> ALJ: That's not an appropriate question.
> ATTY; Are you instructing him not to answer, your Honor?
> ALJ: Pardon me?
> ATTY: You're instructing the vocational expert not to answer the question?
> ALJ: [inaudible]
> ATTY: In response to the hypothetical give you by the Administrative Law Judge, with one change -- if the person does have mental restrictions due to depression and fatigue for lack of sleep, that the person would have to take additional breaks during the day other than the breaks you mentioned morning, afternoon and lunch -- would those jobs then be available? I'm sorry, could that person actually perform jobs you've listed?
> ALJ: First, you're asking him to make a medical decision, which he cannot do. Second, as you well know, our regulations provide tif you cannot do a full eight-hour day, then you're automatically disabled. Therefore, I'm going to find this as an inappropriate question.
> ATTY: Your honor, I'm not asking him to make a medical diagnosis. I'm saying because of stress and fatigue, the person has to take additional breaks during the day. That there would be a mental limitation.
> ALJ: I made my ruling. Move on.

### G.     DISCUSSION

   a)     Due process

Plaintiff argues that the exchange between counsel and the ALJ during the questioning of the vocational expert constitutes a denial of her right to cross-examine witnesses, thereby violating due process, and preventing a full and fair development of the record.

**No. 1:05CV65-MMP/AK**

A review of the exchange that occurred during the hearing set forth above shows that the attorney was cut short by the ALJ on two lines of questioning: whether a person working part-time is given the same number of breaks as a full-time person and whether Plaintiff's alleged mental impairment would affect her ability to do the jobs the expert had identified.  It is not clear why the ALJ found these questions "inappropriate" and prevented the attorney from any further inquiry.  The undersigned agrees with the opinion of Plaintiff's counsel voiced at the hearing that she was not attempting to elicit a medical decision from the vocational expert.  However, even if the ALJ's decision to limit this line of questioning was error, there was more than substantial evidence to support his finding that Plaintiff was not disabled making any such error harmless.  Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991) (an error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

As the ALJ explained in her decision, the objective medical evidence revealed no medical condition that would cause the level of pain and limitation Plaintiff described.  The primary event that Plaintiff says caused her disability was when she fell in November 1999, which was treated at the emergency room as a neck and back strain not even requiring x-ray or treatment other than heat and analgesics.  X-rays taken in 2003 at the emergency room showed nothing but degenerative changes.  When Plaintiff continued to complain of back pain following another fall she was prescribed physical therapy, which she did not attend as prescribed.  In fact Plaintiff's treatment history is

**No. 1:05CV65-MMP/AK**

replete with non-compliance, which strongly militates against the credibility of her complaints. A claimant's refusal to follow prescribed medical treatment without a good reason will preclude disability, unless poverty can excuse non-compliance. Ellison v. Barnhart, 355 F.2d 1272, 1275 (11th Cir. 2003). Although poverty was clearly a recurring issue in her life, it did not preclude her from medical treatment and medication, which she was apparently able to obtain despite her financial difficulties. Nowhere in her treatment notes does she complain that she could not get her anti-depressants or her reflux medication because she could afford them. She confessed that she simply forgot to take the medications regularly. Poverty would clearly not be a cause for failing to quit smoking or drinking, yet after being diagnosed with Hepatis C, having abnormal liver profiles, being incarcerated, and going to Bridge House, she continued to drink and smoke. Noting her non-compliance does not mean that Plaintiff has no conditions or limitations affecting her ability to work, it simply shows that the *severity* of these conditions and limitations is dubious given that she does not comply with the suggestions of her medical sources for alleviating the affects of these conditions. Indeed, despite the record of non-compliance, the ALJ found her to be limited exertionally to some degree because of her alleged back pain. However, the overwhelming evidence of record supports the ALJ's finding that she was not disabled and could perform work at a light level.

The medical evidence also supports the ALJ's finding that her mental condition was not severe. See below. Thus, any error that resulted in the preclusion of the line of

**No. 1:05CV65-MMP/AK**

questioning posed by counsel at the hearing on either of these two issues was harmless since the ultimate result would have been the same.

A finding of prejudice is also required before remand is warranted for further development. <u>Brown v. Shalala</u>, 44 F.3d 931, 934 (11th Cir. 1995). In the present case, the questioning about breaks for part-time work was not material since the inquiry for the vocational expert is the Plaintiff's ability to perform full-time work only. Further, the questions about Plaintiff's mental impairment were not pertinent since the ALJ expressly found that she did not suffer from a severe mental impairment and her depression did not affect her ability to work. There is no merit to this ground.

    b)    <u>Hypothetical</u>

Plaintiff argues that the effects of her depression should have been included in the hypothetical posed to the vocational expert. The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication. <u>McSwain v. Bowen</u>, 814 F.2d 617, 619-20 (11th Cir. 1987). The fact that Claimant sought no medical treatment for her mental problems militates against a finding of severity of these alleged impairments. <u>Roberts v. Apfel</u>, 222 F.3d 466, 469 (8th Cir. 2000); <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997).

Plaintiff herself admitted at the hearing that her medication controlled her depression and that she had never sought mental health treatment. Her description of

**No. 1:05CV65-MMP/AK**

daily activities did not reveal any limitation resulting from a mental impairment, and she was able to work part-time at the time of the hearing without any complaints because of depression or fatigue, in fact she stated that she was seeking to increase her present work load. None of her treatment history focused on a continued problem with fatigue or depressive symptoms or her medication could have been adjusted or some type of counseling prescribed. However, given her non-compliance with taking her anti-depressants as prescribed, any continued problems with the effects of depression, such as fatigue, could clearly be attributed to Plaintiff herself.

Thus, the medical evidence does not support a finding that her mental impairment was severe and the ALJ was not required to pose this or any mental limitations in his hypothetical to the vocational expert.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **31st** day of August, 2006.


s/ A. KORNBLUM
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and

**No. 1:05CV65-MMP/AK**

**recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:05CV65-MMP/AK**